HENRY FAILING AND OTHERS, RESPONDENTS, v. A. M. OSBORNE, APPELLANT.

## Appeal from Lane County.

CONDITIONAL AGREEMENT.—The parties having entered into an express agreement, to be liable in a certain contingency, no agreement to assume other similar liabilities can be implied.   The specification of a particular contingency. excludes all ideas of liability upon a different contingency.

COVENANT OF WARRANTY.—The plaintiffs stipulated on the sale of land, to refund the purchase money, "if it should be adjudged that they had no legal right to sell, and if said defendant by reason thereof, be legally compelled to give up possession of said premises:" Held, that the defendant borne had no greater right under this contract, than one who takes under a covenant of general warranty.   That there must be an ouster; either actual or constructive, before a cause of action arises.

EQUITABLE RELIEF ON SALE OF LAND.—The cases in which courts of equity interfere to give relief, where the land exceeds or falls short of that which is specified in the deed or contract of sale, are those in which the sale of land has been made by the acre or foot, or where there has been fraud or wilful misrepresentation.

Failing v. Osborne.

THIS action was to recover $1,000, upon a promissory note made by the defendant on the twenty-first of December, 1866, payable to the plaintiffs. The defendant answered that the plaintiffs, having judgment against one J. L. Brumley, had caused execution to issue and to be levied on a tract of land in Lane County, known as "Brumley's Ranch;" which tract was offered for sale on the execution, on the fifth of December, 1866, and was by the sheriff struck off to one Woodward, who failed to complete the purchase; that the defendant, at the plaintiff's request, took the place of Woodward, and completed the purchase undertaken by Woodward, taking the land at $4,000, paying $2,000, and giving his two promissory notes of $1,000 each, one note payable April 1, 1868, and the other April 1, 1869, that the plaintiffs knew that the title to a part of the land was not good, but represented to the defendant, that the title was good, and represents that the tract contained 1,200 acres, that through the plaintiff's representations the defendant was induced to take a title under said sheriff's sale, by an assignment from Woodward, of the sheriff's certificate of sale, under said judgment; that the tract contained only 1,040 acres, and that the title to a large part of that failed, to defendant's damage, in the sum of $2,500. The defendant asks to have the same off-set against this note, and asks that the other note, due April 1, 1869, be delivered up to be cancelled. The replication denied the affirmative allegations in the answer.

The transcript contains the evidence taken on the trial of the cause. The evidence, which is somewhat voluminous, relates to several disputed questions of fact; some of which, under the view taken of the case by this court, are not material. Among other things, it was shown on the trial, that at the time of the execution of the two promissory notes, one of which is the basis of this action, and at the time of transferring to the defendant, the sheriff's certificate, originally intended for Woodward, the plaintiffs made a written promise or agreement to the defendant Osborne, which was

subscribed by their attorney, and accepted and offered in evidence in this case by the defendant, in the words following, viz.: "In consideration of a sale of lands, say about 1,200 acres in Lane County, made December 5th, 1866, by virtue of sundry executions against J. L. Brumley, and the certificate of sale having been, this twenty-first December, 1866, assigned by Woodward, the purchaser, to A. M. Osborne, and inasmuch, as since said sheriff's sale, and before the assignment, a rumor has come into circulation, that the legality of said sheriff's sale may be contested, and the said Osborne having given his notes for $4,000, purchase money. Now it is agreed by H. W. Corbett, Henry Failing, Smith & Davis, Canfield, Pierson & Co., S. A. Wood, and Jones, Tobin & Co., the creditors, at whose instance said executions were issued, in consideration of the foregoing, that if it shall be adjudged that said creditors had no legal right to sell said premises, and that, if said Osborne shall, by reason thereof, be legally compelled to give up possession of said premises, then said creditors shall refund the purchase money paid by him, with interest from the date of, being so compelled.

"S. ELLSWORTH,

"Att'y for said creditors."

"Dated December 21, 1866.

The court below rendered a judgment for plaintiffs, and defendant appealed.

*Williams & Willis*, for appellant, claims that by said instrument, plaintiffs agreed that they had good right to sell said land to Osborne, and that he should hold and quietly enjoy the same. (Rawle on Covenants, 529, 30, 32, 33; 3 Cushing, 419; 18 Cal. 660, and very many other authorities cited.)

If the legal title to the land was not in Brumley, no execution obtained by any of his creditors, could be levied upon it. They could not claim lawfully what was never vested in him. (15 Mass. 215, note "a.")

Plaintiffs fraudulently procured defendant to accept that title by sheriff's sale, knowing that the title to the land was not good.

*Judge Shattuck* and *S. Ellsworth,* for respondents, claims neither the plaintiffs or their attorney, made any misrepresentation as to title or quantity of land of their debtor, but if they had, no liability would attach to them. *Caveat emptor* applies with full and peculiar force to judicial sales. (Story on Sales, sec. 169; 5 John. Ch. 84; 23 Pick. 265; 3 N. Y. 79, etc.)

There was a special agreement in writing, which includes all the terms of the agreement between the parties.

Lands were sold in bulk; and vendor, even if owner, is not liable for deficiency in quantity. (3 Selden, 210; 26 Wend. 169; 6 Cow. 481, etc.; 8 Allen, 334 as to representations of price or value.)

UPTON, J. The defense relied upon in this case, is substantially, that the plaintiffs being interested in procuring a responsible bidder for the premises levied upon, falsely represented the title to be good, when they knew it to be bad as to part of the land, and that they represented the parcels constituting the tract, as containing 1,200 acres, when, in fact, they contained but 1,040 acres. The written agreement offered in evidence by the defendant, as made at the time of, and as part of the transaction, contains a recital that " a rumor has come into circulation, that the legality of said sheriff's sale may be contested." The defendant was put upon inquiry whether the sheriff had a "legal right to sell said premises." Under this state of facts, the parties entered into an express agreement that, upon certain contingencies, the plaintiffs would " refund the purchase money," then about to be paid by the defendant. If the property did not belong to Brumley, the creditors had no legal right to sell. A rumor had arisen, and come to the knowledge of the contracting parties, that that question might be contested, and they stipulated that " if it should be *adjudged* that said creditors had no legal right to sell, and if said Osborne, by reason thereof, be *legally compelled* to give up possession of said premises," they would refund, with interest. It seems to have been distinctly settled what risk each party would take

The defendant Osborne, assumed the responsibility in case of a contest to defend until judgment should be had, and until he should be legally compelled to surrender possession. If he could defend successfully, he could claim nothing from the plaintiffs. If unsuccessful, he had recourse upon them for the purchase money and interest, but not for the costs of the action. The parties having entered into an express agreement to be liable to a certain extent, or upon a certain contingency, no other agreement in regard to the same matter, can be implied, and the particulars being expressed, excludes all ideas of liability upon the contract to a greater extent, or upon a different contingency. The recitals show that the risk of title was a subject under consideration, and it was settled by express agreement, what, and how much, liability each party undertook to assume. The liability assumed by the plaintiffs, was similar to that assumed by a grantor, who enters into a covenant of general warranty, in those states where the purchase money and interest is held to be the measure of damages. The legal effect given by construction, to the formal words of general warranty in those states, is precisely what the parties have expressed in words in this instrument. The evidence does not tend to show that the plaintiffs resorted to artifice or intentional deception, and it is shown that the plaintiffs had peculiar means of knowing the condition of the title, not equally open to the defendant. It cannot reasonably be contended, that, under the terms of this instrument, the defendant had any greater rights than those of a grantor under a deed of general warranty. He claims to recover $2,500 damages, and to have the damages set off to that extent, against the promissory note. The time has not arrived, when he can claim damages on account of failure of title, because by the terms of the agreement, no such right accrues to him, until he is turned out of possession. There must be an ouster, either actual, by being put out, or constructive, by surrendering to the paramount title, before the purchase money can be claimed. (*Abbott* v. *Allen*, 2 John. Ch. 519.) The point in regard to the alleged

mistake in the number of acres, is settled by authority too firmly, to be open to argument at the present day. It is not alleged that any deception was practiced in regard to the quantity, but simply that the tract was represented as 1,200 acres, when in fact, it contained but 1,040 acres, that is, the tract contained but thirteen fifteenths of what the parties supposed at the time of the contract. "The cases in which courts of equity interfere to give relief, when the land exceeds or falls short of that which is specified in the deed or contract of sale, are those in which the sale of the land has been made by the acre or foot, or where there has been fraud or wilful misrepresentation, on the part of the party against whom relief is sought, to induce the other party to believe the quantity of land conveyed, was different from what it really was." (*Morris Canal Co.* v. *Emmett*, 9 Paige, 168.) In this case, several different donation claims make up the one tract sold, and there is nothing in the allegations or proof, to show that any of these were sold by the acre.

Judgment should be affirmed.